IN THE

# SUPREME COURT OF NEBRASKA.

## SEPTEMBER TERM, A. D. 1891.

PRESENT:

Hon. AMASA COBB, Chief Justice.
" SAMUEL MAXWELL, } Judges.
" T. L. NORVAL, }

---

### Frederick Meyer v. Albertina Anderson.

[Filed September 22, 1891.]

1. **Husband and Wife**: Trusts: Assignment for Creditors. A. A., a widow who had received a homestead and other property as a bequest from her deceased husband, married L. C. A. and allowed him to sell the homestead and buy other lands with the proceeds, taking the title in his own name, which he also sold, and upon buying the third or fourth farm, at the request of A. A., the title was taken in the name of A. A. and L. C. A., as tenants in common. Afterwards, L. C. A. traded the farm, of the value of $1,400, for a stock of groceries, and A. A. joined in the deed of the farm upon the promise of L. C. A. to pay her the one-half of the consideration received by him therefor. L. C. A. proceeded to carry on trade upon the said stock of groceries, and in such trade contracted debts, which, being unable to pay, made an assignment under chapter 6, Comp. Stats. In an action by A. A. against the assignee to establish her claim against the estate of L. C. A., *held*, that she could recover.

4 (1)

2. **Evidence** considered, and *held*, to sustain the verdict and judgment, except as to the excess required to be remitted.

ERROR to the district court for Colfax county. Tried below before MARSHALL, J.

*Phelps & Sabin,* for plaintiff in error, cited: *Bertles v. Nunan,* 92 N. Y., 160; *Hunt v. Johnson,* 44 Id., 31; *White v. Wager,* 25 Id., 333; *Aultman v. Obermeyer,* 6 Neb., 260; *Smith v. Dean,* 15 Id., 433; *Humes v. Scruggs,* 94 U. S., 22; *Bank v. Norwood,* 50 Ark., 42; *Savage v. Murphy,* 34 N. Y., 508; *Carpenter v. Roe,* 10 Id., 227; Perry, Trusts, sec. 678; Schouler, Domestic Relations [3d Ed.], sec. 119, 678; *Jenkins v. Middleton,* 68 Md., 540; *McClure v. Lancaster,* 24 S. Car., 273; *Glidden v. Taylor,* 16 O. St., 509; *Fisher v. Herron,* 22 Neb., 183; *First Natl. Bank v. Bartlett,* 8 Id., 328; *Bartlett v. Cheesbrough,* 23 Id., 767; *Plummer v. Rummell,* 26 Id., 142; *Brown v. Mitchell,* 102 N. Car., 347; *Bain v. Buff,* 76 Va., 374; *Beecher v. Wilson,* 84 Id., 813; *Kesner v. Trigg,* 98 U. S., 50; *Smith v. Sands,* 17 Neb., 598; *Beels v. Flynn,* 28 Id., 575; *Burt v. Timmons,* 29 W. Va., 441; *Kane v. Weigley,* 22 Pa. St., 179; Bump, Fraud. Con. [3d Ed.], 57–59; *Lee v. Cole,* 44 N. J. Eq., 318; *Bailey v. Gardner,* 31 W. Va., 94.

*E. T. Hodsdon,* and *C. J. Garlow, contra,* cited: *Monteith v. Bax,* 4 Neb., 17; *Linscomb v. Lyon,* 19 Id., 515; *Randall v. Randall,* 37 Mich., 563; *Jaycox v. Caldwell,* 51 N. Y., 395; *Woodworth v. Sweet,* Id., 8; *Whitford v. Daggett,* 84 Ill., 144; *Monroe v. May,* 9 Kan., 466; Schouler, Hus. and Wife, sec. 395; *May v. May,* 9 Neb., 22.

COBB, CH. J.

Mrs. Albertina Anderson, defendant in error, commenced her action in the district court of Colfax county, and in and by her petition alleged:

First—That on or about the 20th day of April, 1885, L. C. Anderson, of Schuyler, made an assignment for the benefit of creditors.

Second—That the defendant, Frederick Meyer, was appointed assignee of said L. C. Anderson, and accepted the trust and entered upon execution thereof.

Third—That on the 26th day of May, 1885, the plaintiff herein filed her claim in the sum of $1,688.50 in the county court of Colfax county, for money loaned and received by the said L. C. Anderson, and for the property of the said claimant had and received by him to the use and benefit of the said claimant.

Fourth—That the said L. C. Anderson is indebted to the plaintiff in the sum of $1,688.50, and avers that she was the sole devisee under the last will and testament of her former husband, John Peterson, deceased; that she received under said will certain lands, describing them; that she intermarried with said L. C. Anderson prior to the 16th day of November, 1881, and that on or about the date last mentioned, the above described premises were sold to one Patrick Murphy by her, and that said L. C. Anderson received from the sale of said real estate the sum of $920 to plaintiff's use; that the said real estate so sold was her separate property, and the said sum derived solely from such separate property; that the said L. C. Anderson, from a portion of the funds so derived from plaintiff's separate property, purchased another farm of Walter Craig, describing the same; that in September, 1882, the said farm purchased of said Craig was sold by said Anderson and plaintiff to Hutton Moore; that on or about July 28th, 1883, said Anderson paid out from said funds realized from the plaintiff's separate estate for the said farm purchased from Craig, the sum of $600 and received from the sale thereof to said Moore, $500 in cash and notes, upon which he realized, by discounting the same at the bank, the further sum of $330, and at about said last

mentioned date, said Anderson received the further sum of $41 from the sale of a cow belonging to the plaintiff; that with these funds so received from the plaintiff's sole and separate property the said Anderson purchased of Z. L. Newell the south half of the southeast quarter of section 10 and the northeast quarter of the northeast quarter of section 15 in township 17 north, of range 3 east, in Colfax county; that in September, 1884, said last mentioned tracts of land were sold to Christian Erichson for $1,400, above the incumbrances thereon; that it was then agreed that the said plaintiff should loan the said L. C. Anderson the said amount derived from the sale of the farm purchased of Z. L. Newell, to wit, $1,400, and that the said L. C. Anderson promised to pay the same; that the said L. C. Anderson received the sum of $250 from the sale of a team belonging to the plaintiff, which he agreed to repay to the plaintiff, and also the further sum of $38.50, being the balance of the purchase price of a team sold by him, which said sum he agreed to repay the plaintiff.

Fifth—That said L. C. Anderson has not paid said sum of money, or any part thereof, and there is now due from the said L. C. Anderson to the plaintiff the sum of $1,-688.50 with interest from September, 1884; whereupon she claims judgment for the sum of $1.688.50 and interest from September, 1884.

Frederick Meyer, assignee of the estate of L. C. Anderson, made answer as follows:

That he denies each and every allegation therein contained except such as are hereafter expressly admitted. He admitted that on or about the 20th day of April, 1885, L. C. Anderson made an assignment for the benefit of creditors. He admits that he was appointed assignee; that he accepted such trust and entered upon the execution thereof; that on the 26th of May, 1885, the plaintiff filed her claim in the sum of $1,688.50 in the county court of Colfax county; that the plaintiff at the time and times when the

plaintiff's husband, L. C. Anderson, the assignor, obtained credit and extension of and from his creditors, Meyer & Schurman and John W. Phillips and others, whose claims are pending the proceedings of assignment for the benefit of creditors, the plaintiff being present, united with her husband in saying and representing that her husband owned all the certain property described in his deed of assignment, and that he owed nothing to any person or persons whomsoever except certain of his said creditors who had sold him goods and merchandise, not including her own claim, she at the same time knowing the real truth as to his real standing indebtedness; that the said Meyer, Schurman, and John W. Phillips, relying upon her said statement and those made by her husband in her presence and hearing, and with her consent, sold goods, trusted and extended credit to said L. C. Anderson, assignor; with prayer that the plaintiff's petition may be dismissed, and for general relief.

The plaintiff for a reply filed a general denial to the said answer. There was a trial to a jury, which found for the plaintiff and assessed the amount of her recovery at $1,383.42. The motion of the defendants for a new trial having been made and overruled and the plaintiff in open court having remitted the sum of $172.43 of the verdict, judgment was rendered for the plaintiff in the sum of $1,211 and costs.

Upon the trial the records of the county court of Colfax county, containing the decree admitting the will of John Peterson to probate, also showing the record of said will, was admitted in evidence on the part of the plaintiff. Also a copy of the will of John Peterson, whereby he did bequeath to his wife, Albertina Peterson, all of his property, both real and personal, to be used by her as to her may seem best; to have and to hold the same absolutely and in her own right.

Mrs. Albertina Anderson, being called as a witness in her own behalf, testified that she formerly resided in Col-

fax county from the year 1868 to the year 1881. That she
then resided on a homestead in Maple Creek; that it was
her husband's farm and her husband's name was John
Peterson; that he died December 24, 1880; that she was
the administrator of his estate; that she afterwards inter-
married with L. C. Anderson on the 21st day of April,
1882; that she received from her husband, John Peterson,
eighty acres of land together with eight head of horses,
thirty head of cattle, between fifty and sixty head of hogs,
and a good many other things; that the eighty acres of
land which she received from her husband, John Peterson,
was sold by her present husband, L. C. Anderson, to Pat-
rick Murphy for the sum of $920; that $600 of this
money her husband, Anderson, paid to Mr. Craig for an-
other farm which he bought of him; that this latter farm
he kept from the spring to the fall of the year when he
sold it to Hutton Moore for $830; with this money her
husband, L. C. Anderson, bought a farm called the Newell
farm upon which he moved in the spring of 1884. They
lived upon this farm six or seven months when her hus-
band, L. C. Anderson, sold that farm for stock in Mr.
Erichson's store. Being asked to describe all about that
transaction, what was done about his going into business
there, she answered: "The money, I realized it from my
property, I let my husband have and he went into business
and then he failed and I lost the money without my con-
sent." Being asked to state what was done between her
and Mr. Anderson about the investment of these funds
that were derived from the Newell farm, she answered:
"Well, my husband went into the grocery business without
my consent and I told him he had better decide first before
he had it; he was very much against me but still he did it
anyhow; I said for him when he went to town—I told
him not to do it before he had decided; still when he came
back it was done anyhow. Then of course it happened that
way." Being asked to state what was said between her

and him about this money, she answered: "I did not feel satisfied with it when he had done it; so I was asking when I can get the money derived from the homestead to help my children, to provide for them, and he said the first money he could raise from the store he would pay me back for my children because they need clothing and books and school and such things and I had nothing to give them except that." That this talk was had in the Erichson store. Being asked to state whether or not at any other time she had a talk about that matter, any conversation with him about that, she answered: "I had a conversation several times about to get my money back, but he don't seem he can raise it; but still he always promised but never got anything more." Being asked to state what he promised, she answered, "to pay me the money back." Being asked to state when it was that she first talked about it, she answered: "We talked about it when he first came into town; because I always objected to that."

Q. Did you talk about it at any other time?

A. I all the time talked about him done wrong when he went into the store business because I knew he was not the man to run it.

Q. State whether you talked about it at the farm.

A. Didn't talk very much about it on the farm; just as we came into town and we put the money in there. So long as he was buying and selling farms he always make some money besides, and I was satisfied with that, but when he went in the store business I couldn't feel satisfied; I knew he was not the man to run it.

Q. How many times did you and he talk this matter over?

A. Ah; several times.

Q. Well, state to the jury what the substance of that talk was here in town; state to the jury what that talk was as near as you can recollect it about this matter.

A. Several times we were speaking about it because I

have nothing to provide for my children. I see I could get it no other way and I was to have it from him. I had nothing to do it with; I always was asking him for the money; he said he would raise the money as soon as he was able to from the store; I had no interest in the store; I was to get the money from there, for my money was in there. When he could not sell in the store and could not make anything he was to pay me back; that was the bargain when he got a cent to sell and buy. Witness further stated that she had a note for $250 which was received for a team which she had sold and which L. C. Anderson collected and put in the store; also one cow belonging to her which he sold for $41 and put in the store.

Q. How much was realized from that Newell farm over and above the incumbrances?

A. $1,400. That none of the said money had ever been repaid to her.

Upon cross-examination she answered that L. C. Anderson had her consent to take of her money $600 and put it into the land he bought of Craig, at which time he said that whenever he sold the farm she was to have that money back; that he sold the whole Peterson homestead with her consent; that she signed the deed but don't remember the circumstance; that she didn't see the whole of the $920 paid to her husband but knows that it was paid to him; knew it at the time from her husband; that no written contract was made between her and her husband for the paying back to her of the money derived from the Peterson farm; that it was sold in 1882, in the fall. That she was not present when her husband bought the farm of Walter Craig but that she went along with him to look at the farm when he bought it, but wasn't along when he got the contract or made the payment. That she saw him make a payment of $200 on the Craig farm, but only knows of the payment of the balance by what her husband told her; that she was willing to let him have the money

to use, but he always promised to let her have it back again; didn't put that promise in writing; that she signed the deed when he sold the Craig farm; signed it in Mr. Russell's office; that when her husband bought the Craig farm it was taken in his name; when he bought the Newell farm it was taken one-half in plaintiff's name and one-half in his; that he wanted to do it all in his name, but that she wanted to have a part of it anyway to have something that she could claim as her own because she needed it for her children; that the Newell farm was all paid for with her money; was bought of Mr. Newell himself; that her husband raised one crop on the Newell farm, and in the fall he sold the farm, traded it to Mr. Erichson for this stock of goods; that he came home one day and told her that he had sold the farm to Mr. Erichson and was to take Erichson's stock of goods to pay; that she was not along when he made the deed to Mr. Erichson, but remembers very well that Mr. Grimison came up to the house and she signed her name. On being recalled she stated at the time she married her second husband, L. C. Anderson, he had no property of his own.

M. B. Erichson was called as a witness by the plaintiff. Testified that in October, 1884, he bought a farm from L. C. Anderson and that the consideration for which was that Anderson bought witness's goods, and witness taking the farm for $2,200; that there was a mortgage on it of $800, making the amount of goods $1,400. Upon cross-examination witness stated that he made this trade with L. C. Anderson. To the question, "Did you have any talk with his wife at the time?" he answered: "Ah, yes; she knew all about the trade, she wanted to come to town to live; they have to live in town."

Patrick Murphy was called as a witness on the part of the plaintiff. Testified that he has resided in Colfax county since 1872, and is acquainted with Mrs. Albertina Anderson; that he owns the farm she used to own; that

he paid $1,000 for it cash down; that there was an old house situated on the land and it was understood that they were to take the house away as it was of no use to him, and they moved it in here to Schuyler. Upon redirect examination he stated that he believed there was something thrown off of the price of $1,000 in consideration of their moving the house away.

Fred Meyer was sworn as a witness on the part of the defendants. Testified that he is the assignee of L. C. Anderson; that before the assignment witness's firm sold him goods from time to time; that during the six months or more that Mr. Anderson was doing business in the store witness visited the store. The second month after witness's firm had the first dealings with him, witness called on him and inquired about his circumstances financially, and that Mrs. Anderson was present at those times; that Anderson told witness that he owed witness's firm the most, and he owed a few other dollars to parties in Council Bluffs and other places; said that was all he owed; said that he didn't owe anything except for goods; that the first time witness called on Anderson and had these conversations was shortly after he went into business; that some part of the claim witness's firm has against Anderson was contracted before this conversation; most of it was probably sold afterwards; that the most of these goods were sold by the firm's agent, Mr. Sillick; witness sold him some little goods, not much, very little; that the firm's claim against the estate is $800 or $900.

H. B. Sillick, sworn as a witness for the defendant, stated that he is acquainted with Mr. Meyer, the assignee, and also with Mr. Anderson, and also with Mrs. Anderson; that he had dealings with Mr. Anderson commencing in October last until some time in April, in 1885; is acting for Meyer & Schurman of Fremont; was selling to Mr. Anderson in their behalf; that at times when he was there selling goods, or for other purposes, he saw Mrs.

Anderson there, and at such times had conversation between himself and Mr. Anderson about the matter of Anderson's debt; that witness was there for the purpose of collecting the account, that is, the portion of it that was due, and on several different occasions Mrs. Anderson was present, and witness had talked with Mr. Anderson in reference to this account, and witness was urging him, very strongly to pay this account, and at different times he showed witness his books, copies of his supposed indebtedness as proof that he was financially responsible for the account that he held in his hands. At one time he took witness in his little office, situated in the middle of his store, and showed him his books, showing what he was owing; that Mrs. Anderson was leaning on the railing surrounding this office; that the railing was perhaps 6x8 feet; the office part may be larger, may be smaller; that he was sitting on the inside at the desk and was showing witness through the books containing his accounts, and, among others, witness remembers of their account, so much money, and saw that of Phillips, of Council Bluffs, and Gronewig and Schotengen, of Council Bluffs. He at that time told witness that that was all he was owing; that he had of Mr. Erichson in full for the stock, which Erichson corroborated afterwards; that she was observing and noticing what was going on; that witness had other orders after that, he sent them into the house.

Allen Cameron was called as a witness on the part of the defense and identified the deed of assignment executed by L. C. Anderson and Albertina Anderson, dated April 28, 1885, whereupon defendant offered said deed in evidence.

The plaintiff being recalled testified that she heard a portion of the testimony of Mr. Meyer when on the witness stand here to-day; that she couldn't hear very well, but that she heard some of it. Her attention being called to a conversation that he testified to as having taken place

in November or December of the year that Mr. Anderson
was in business, when witness Meyer says that Mrs. Al-
bertina Anderson was there, and witness was asked when,
if at any time, she ever saw Mr. Meyer in that store, she
answered, " I saw him for the first time one morning I
came to town and Meyer and my husband had a conversa-
tion in the store.   My husband introduced Mr. Meyer to
me and Mr. Meyer stepped up and offered his chair, and
I told him to keep the chair, and just a few moments, the
most of it five minutes, I was in the store, he went out."
That while witness was in the store at that time Mr.
Meyer did not say anything to Mr. Anderson in witness's
hearing about how much he owed to parties in Council
Bluffs or anywhere, else; that she never saw Mr. Meyer at
any other time in that store, and never saw him after that
until she saw him at Mr. Grimison's office last summer.
She further testified that she heard Mr. Sillick testify on
the stand.   To the question whether at any time he testi-
fied to when he said he was in the office in the store where
witness ever heard any conversation between him and her
husband relative to how much her husband owed, she an-
swered, " No, I never was in the office when there was a
strange man in there."   To the question, " Did you at that
time hear any conversation between Mr. Anderson and
Mr. Sillick, any statements whatever as to how much Mr.
Anderson owed?"   "A. I did not."

Upon the trial the following instructions were given by
the court on its own motion (so far as appears), the giving
of which is assigned for error:

2. The jury are instructed that the burden is upon the
plaintiff, and it is for her to prove every material allega-
tion contained in her petition by a preponderance of the
evidence.   If upon any one or more of these material al-
legations the jury find the evidence evenly balanced, or
that it preponderates in favor of the defendant, then the
plaintiff cannot recover, and the jury in that case should

find for the defendant. The allegations of the petition which are admitted in the answer need no further proof.

The jury are instructed that the burden is upon the defendant, and it is for him to prove every material allegation contained in the second count of his answer. If upon any one or more of the material allegations of this court of the defendants' answer the jury find the evidence evenly balanced, or that it preponderates in favor of the plaintiff, then the defendant cannot succeed upon the defense set up in that count, and as to that defense, the jury should find for the plaintiff. By a preponderance of the evidence is meant the weight of evidence; that which, on the whole evidence, when fully, fairly, and impartially considered by the jury, produces upon the mind of the jury the stronger impression and is more convincing as to its truth when weighed against the evidence in opposition thereto.

5. The jury are instructed that if they from the evidence believe that the money realized from the sale of the Peterson homestead eighty-acre farm was invested and reinvested by the said L. C. Anderson, as the agent of the plaintiff, in other lands, as stated in the plaintiff's petition, with the consent of the plaintiff or by her direction, and that the last farm in which said money was invested was traded as $1,400 by the said L. C. Anderson for the stock of goods which, together with other property, was assigned by the said L. C. Anderson for the benefit of his creditors, and that the same is held by the defendant as assignee, and if the jury from the evidence believe that the said L. C. Anderson promised to pay back to the plaintiff, as her separate property which was used by the said L. C. Anderson in his business or otherwise, and if the jury further from the evidence believe that the said L. C. Anderson has not paid said sums of money or any part thereof to the plaintiff, then the jury will find for the plaintiff an amount equal to the amount of money or property belonging to the plaintiff as her property which the said L. C. Ander-

son used and promised to pay back to the plaintiff, unless the jury shall find for the defendant upon the defense set up in the second count of his answer; but if the jury find that defense sustained by the proof they will find for the defendant.

7. The jury are instructed that the material allegations in the plaintiff's petition are the following:

First—That said L. C. Anderson received and used certain sums of money, the separate estate of the plaintiff, and that he sold or disposed of certain property of the plaintiff and used the same for himself.

Second—That he promised to repay the plaintiff the said sums of money and the value of the property so used by him.

Third—That, although requested, he has not paid the same, and the same is still due from the said L. C. Anderson to the plaintiff.

9. The jury are instructed that upon the claim of the plaintiff they should from the evidence determine whether the said L. C. Anderson sold the separate property and land of the plaintiff, and for her, acting as her agent, invested the proceeds of the sale in other lands, and if the jury from the evidence find that he did so sell and invest the proceeds of such sale or sales, then the profits arising from such investment would belong to the plaintiff. And if, from the evidence, the jury further find that the Newell farm was the last investment of the proceeds of such sale or sales, and that this farm was exchanged by said L. C. Anderson to M. B. Erichson for a stock of goods, and that said L. C. Anderson, at or about the time of such exchange, promised to pay back to the plaintiff the $1,400, the price for which the said Newell farm was taken in the exchange, then the said L. C. Anderson upon the land transactions would be indebted to the plaintiff for said exchange price. This, together with whatever other moneys of the plaintiff he had used and promised to pay back to

Meyer v. Anderson.

her, would be the extent and amount of his indebtedness to her, if the jury, from the evidence, find that he was indebted to her.

10. The jury are instructed that if from the evidence they believe that the said L. C. Anderson took the plaintiff's money while acting in his own behalf, and not as her agent, and invested the proceeds of the sale of her lands in the purchase of other lands and thereby made a profit on such investment or investments, in that case it would be the amount of money so taken, excluding the profit, that would measure or determine the extent of the liability of said L. C. Anderson to the plaintiff, so far as such liability depends upon the appropriation of the proceeds of the sale of the plaintiff's land, for the purchase of which the plaintiff's money was used with or without her consent, or with the promise of the said L. C. Anderson to pay it back to her, would be the extent and amount of his indebtedness to her, if the jury so find he was indebted to her.

11. The jury are instructed that the defense set up in the second count of the defendant's answer is what in law is termed an estoppel *in pais*. This estoppel arises, or is created, whenever a person, by his or her words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief so as to change his previous condition. The person inducing such belief will be estopped, that is, prevented, from afterwards denying the existence of such a state of things, to the prejudice of the person acting. If, from the evidence in this case, the jury believe that said L. C. Anderson represented to his creditors, before they sold him the goods by which they became his creditors, in the presence and hearing of the plaintiff, that he owed no other persons except those who sold goods to him, and that said creditors believed said representations, and acting upon such belief they sold to said L. C. Anderson goods, and gave credit to him for the payment of the purchase price

thereof, then the plaintiff cannot now be heard to say that the said L. C. Anderson was indebted to her. But if the plaintiff was present at the time such representation was made, but did nor hear or understand the representation made by said L. C. Anderson to such creditors, then she would not be prevented from showing or proving his indebtedness to her; or, if the jury, from the evidence, do not believe that the said creditors believed and acted upon such representation in selling said goods, then she would not be estopped or prevented from proving any indebtedness due from the said L. C. Anderson to her.

The following instructions asked for by the defendants were refused, which refusal is also assigned for error:

1. If the money which a married woman might have secured to her own separate use and benefit is allowed to go into the business of her husband and be mixed with his property and is applied to the purchase of real estate for his benefit and advantage, and is permitted to be used for the purpose of giving him credit in his business, and is thus used for a series of years, there being no specified agreement when the same is purchased that such real°estate shall be the property of the wife, the same becomes the property of the husband for the purpose of paying his debts. The wife cannot permit the husband to so use her property until he becomes insolvent and then set up a claim to it in fraud of the just claims of the creditors of the husband.

2. The presumption, when a husband receives money of his wife and uses it in his business and in the purchase of property in his name, is that she intended to give and not loan it to him.

3. To rebut this presumption, the proof must be distinct, full, and conclusive, amounting almost to an admission of a contract by which said property was to be considered the property of the wife and a promise to repay the same.

4. By the evidence of the plaintiff herself, and her own

pleadings, L. C. Anderson was permitted to use the money the plaintiff now claims; was allowed to mix it with his own property, and to be applied to the purchase of real estate in his name and to be used in his business, and if you find that he thereby obtained credit and advantage in his business, and plaintiff allowed him to hold himself out to the world as the owner thereof, and to contract debts on the credit of it up to the time of his insolvency, the court instructs you that it would be against the plainest principles of justice and good conscience, and utterly subversive of fair dealing, to permit the wife to step in and claim her property which she had permitted her husband to hold and proclaim as his, and obtain and enjoy credit and business standing thereby, and thus to defraud the just debts due to his honest creditors.

5. You are instructed that the assignment made, executed, and delivered was the assignment of Mrs. L. C. Anderson, the plaintiff, as well as that of her husband, L. C. Anderson.

6. You are instructed that the assignment offered in evidence and relied upon by plaintiff is not in substance and effect such an instrument as is required by law to convey title to the assignee, and is void.

7. You are instructed that it is your duty under the law, and in view of the evidence, to find a verdict for the defendant.

8. You are instructed that the plaintiff cannot maintain this, an action at law against the assignee of her husband, growing out of an agreement made between husband and wife, and you will therefore find for the defendant.

The cause is brought to this court by the assignee, by petition in error, upon the following assignments:

1. The verdict is not sustained by sufficient evidence.

2. The verdict is contrary to law.

3. The court erred in overruling defendant's motion to dismiss the action after plaintiff had rested her case.

4. The court erred in overruling defendant's first motion and request to be allowed to amend his answer and conform to the proof.

5. The court erred in overruling defendant's second motion and request to amend his answer and conform to the proofs.

6. The court erred in refusing to give the first, second, third, fourth, fifth, sixth, seventh, and eighth paragraphs of instructions asked by the defendant.

7. The court erred in giving the second, fifth, seventh, ninth, tenth, and eleventh paragraphs of the instructions given on the motion of the court.

8. The court erred in overruling the motion for a new trial.

It will not be deemed necessary to take up these assignments separately, neither to consider the evidence relative to the various transactions of the said L. C. Anderson with the property, the proceeds of the estate of the said John Peterson, devised by him to the plaintiff Albertina. It is not deemed important to consider the status of the property purchased by the said L. C. Anderson, the title of which was taken in his own name. Had the plaintiff questioned any of the sales of such property made by L. C. Anderson, or had he become indebted and a controversy arisen between her and his creditors, it would have become necessary, probably, for the appropriate court to have settled the status of such property, but fortunately such was not the case. It seems, from the evidence, that the homestead left by the said John Peterson by will to the plaintiff was sold by the said L. C. Anderson after his intermarriage with the plaintiff, and the proceeds invested in other property. This money was turned over several times and finally was invested in what is known in the case as the Newell farm, but before taking the deed of the Newell farm, the said L. C. Anderson, recognizing the claim of the plaintiff to, at least, one-half of the money which was going into that

property, took the deed in their joint names. This could have been objected to by no one, unless it might be that the plaintiff could have, with propriety, insisted that the whole title should have gone into her name. Certainly, no one was in a position to object to the property being taken in their joint names. It appears from the evidence that there was an incumbrance of $800 on this property. The interest of the Andersons in it was regarded as $1,400 in the trade by Anderson to M. B. Erichson. In regard to this trade the evidence is conflicting, the plaintiff testifying that her husband, Mr. Anderson, went into the grocery business without her consent, and while her testimony is not easy to be understood, indicating that she is not fully mistress of the English language, yet I think it sufficiently indicates that her husband took an unwarranted liberty in trading away her interest in the land; that she never consented to it, and only signed the deed therefor upon the assurance that her share of the price of the farm would immediately be paid to her out of the proceeds of the grocery. The investment in the grocery then being $1,400, it is very clear that, at least, between Mr. and Mrs. Anderson, she was the owner of $700 of that investment. It further appears from the evidence that at about that time Mr. Anderson became possessed of a note belonging to Mrs. Anderson, the plaintiff, which she had obtained for a team, also a part of the estate bequeathed to her, to the amount of $250; that he collected this note and put the money into the store; also, that he sold a cow belonging to the plaintiff for $41, which money he also put into the store. The money proceeds of these two pieces of property—this note and the cow—seemed to have been put into this business without the consent or even the knowledge, at the time, of the plaintiff. Had it even been otherwise, there can be no pretense that at this time L. C. Anderson was at all indebted, and hence there could have been no intention on the part of the plaintiff

to hinder, delay, or defraud his creditors.    This court will doubtless adhere to the doctrine of *Fisher v. Herron*, cited by counsel for plaintiff in error, but in order to do so it will not have to deny the right of the plaintiff as a creditor under the assignment of her husband, L. C. Anderson.

This is an action under the provisions of sections 16, 17, 18, and 19 of chapter 6 of the Compiled Statutes, the assignment law, and the effect of the judgment in favor of the plaintiff was that the amount found in her favor should be entered of record in like manner as the other claims allowed against the estate of the assignor.

That part of the answer of the assignee presented a defense to her claim as the second ground of defense in which he sets up an estoppel.    This defense was fairly submitted to the jury by the court in the second clause of the second charge given by the court on its own motion as above set out.    This instruction was based upon evidence, which evidence is conflicting; that of the witness H. B. Sillick tending to sustain the allegations of the answer claiming an estoppel, while that of the plaintiff on her own behalf contradicting each material allegation thereof. It was a question for the jury to decide.    This question, by their verdict, they decided in favor of the plaintiff.

The fourth and fifth assignments of error are based upon the overruling of the motions of the defendant to be allowed to amend his answer to conform to the proof. My understanding of the practice is that when a defendant desires to amend his answer in any particular, he should present a draft of such answer to the court and ask leave to file it.    Upon such request being denied, it should be made a part of the bill of exceptions so that the appellate court may be able to see whether such amendment ought to have been permitted, which was not done in this case, nor does it appear in what manner or respect the defendant desired to amend his answer, and I confess that I am unable to see that the answer could have been so

amended upon either of the said motions as to have given the defendant any advantage, or have saved any right which he did not have under the answer as it stood, or would have had upon any amendment thereof which it is conceived he could have made. But upon a recast of the interest upon the plaintiff's claim, it appears that the verdict was for somewhat more than it should have been, arising no doubt upon an error in computing the interest. The plaintiff will therefore be required to enter a remittitur in this court for the sum of $18.99, as of the date of the judgment, within thirty days of the filing of this opinion, or the judgment will be reversed and a new trial awarded, but in the case of her filing such remittitur within the time above limited, the judgment is

AFFIRMED.

THE other judges concur.